The next case today is United States v. Aldridge L. Boss, appeal number 20-2061. Attorney Badway, please introduce yourself for the record and proceed with your argument. May it please the court, my name is Ernest Badway and along with my firm we represent the appellant, Aldridge L. Boss, who serves as the personal representative for the estate of Stuart R. Crane. Your honors, I would respectfully request two minutes for rebuttable time after the government and commonwealth finish their arguments. Thank you, your honor. Your honor, we submit to this court that the final judgment of the district court must be reversed for the following three reasons. There is no evidence that the Hamilton letter was ever stolen, thereby precluding any finding it was illegal to possess by my client and his family. Two, the determination as to if the Hamilton letter is a public record is something that wasn�t first included in the forfeiture complaint. The forfeiture complaint is based upon the unproven allegations that the Hamilton letter was stolen, but it is based upon an application of Massachusetts statutory law that doesn�t say what the district court concluded. Third, your honors, even if the district court were to engage in what we have argued in our hearing to supposedly return the Hamilton letter back to the public, it should have also found that the appellant was an innocent owner under the statute, since there is simply no evidence that the Hamilton letter was illegal to possess, and there was no evidence deduced below that my client or his family at any time over the almost 80 years in which they possessed the Hamilton letter ever had any actual knowledge of the allegations made by the government and the commonwealth. Mr. Badway, let me ask you a series of short yes or no questions. There is no question, is there, but that the Hamilton letter meets the definition of a historical public record under Massachusetts law? Your honor, I would agree that it meets the definition. Okay, wait, wait, wait. That's all I wanted to know. There is also no question, but that the Hamilton letter was originally transmitted to a military official of the commonwealth of Massachusetts, is that correct? I believe, your honor, at the time it was the colony of Massachusetts. The colony of Massachusetts, yeah. That is correct, your honor. Okay. And third, there is no question that thereafter and before your predecessor in interest acquired title that the Hamilton letter was in the archives of the commonwealth of Massachusetts? Yes, your honor. The last noted time was about a hundred years ago, yes. Okay. Now, on the basis of those three facts, how can you prevail in this case? It is unlawful, as I understand it, under Massachusetts law, there is no way for the commonwealth under Massachusetts law to alienate a historic public record once it takes possession of it. There is no evidence of a sale or anything of that sort, and it's unlawful for any person to refuse to return a historic public record to the commonwealth if they do possess it. So how can you prevail? Your honor, that's the government's interpretation of the law. That's not actually what the law says. There isn't a specific requirement that the commonwealth keep even historical documents forever. That's the argument that they tried to prove. We are in the Massachusetts statutes. Does it give any authority for the alienation of a public document once it is secured? Your honor, there is, and actually it was quoted by the government and the commonwealth below, your honor. They actually quote Massachusetts, excuse me, your honor, general law chapter 66, section when they talk about the fact that public records may be alienated. That's the section that says it may be destroyed. That's correct, your honor. That's not an alienation. They can destroy it. No statutory authority that permits them to transfer it to a third party. Your honor, destruction takes place in terms of, and this was an issue not addressed below, your honor, but in terms of destruction, your honor, that is a form of alienation and destruction takes many forms. It doesn't have to be actually shredded or burned or something along those lines. It's just that it's no longer in the possession of the commonwealth. Excuse me. Where do you get that definition of destruction? I mean, is there a dictionary I can look at that defines destruction in that matter? No longer in your possession? Well, your honor, what I'm suggesting to the court is that I understand the court's interpretation of what the dictionary definition. I was actually referring to what your honor had said just previously about alienation. Yes, and I still say that, but you say the answer to that is, well, there's a statute that says they can destroy it, but destruction and alienation are two different things. Well, but your honor, destruction, for example, could mean they threw it into a waste paper basket and it was taken out and someone found the document, your honor. I would not consider that destruction. I mean, look up destruction in any dictionary. It's to cause it no longer to exist. That's to destroy. Yes, your honor. That is a dictionary definition of it, your honor, yes. But there isn't a requirement, your honor, that they actually destroy the document. Is there some legislative history or some reason to believe that the general court, Massachusetts legislature, when they adopted the statute, used destruction in some exotic sense that meant something other than cause it no longer to exist? I have found no legislative history, and I looked, your honor, as to what the Massachusetts legislature meant when they said destruction, your honor. I did not. But your honor, I will therefore, if you confine no legislative history, we have to give it its plain and ordinary meaning, which takes me back to the dictionary. Your honor, I understand that. But your honor, what I would also suggest, too, is that if, in fact, the document hadn't been destroyed but just thrown away, just thrown away, your honor, someone in the Massachusetts archives made a mistake, that still doesn't mean that the government and the commonwealth can come back nearly 80 years later and say, no, no, no, it's ours. It's ours. Counsel, when Judge Selyus started this, he also referred to the fact that under Massachusetts law, it is unlawful for someone to hold a Massachusetts historic record. Okay, so none of your arguments have really addressed that point. Let's assume ordinary dictionary definition, this document wasn't destroyed, it is a Massachusetts historic public record. What is the basis for your claim, contrary to state law, that your possession of it nonetheless was lawful? And please don't give me the, there's no evidence they knew. Anyone dealing in antiquarian documents would have had a very good sense of where this document came from and a quick check of Massachusetts state law would have revealed that it was a Massachusetts historic record which had not been destroyed. So putting aside that argument, what do you say? Well, your honor, I think what Judge Selyus was referring to, and if I could just say this, when he said Massachusetts historical document, the distinction wasn't made below. We're talking about public records, and there isn't a distinction between a quote-unquote historic document versus a public record. There is a Massachusetts statute. Excuse me, counsel, where is this going? Well, I just wanted to clarify that. If you're saying the equivalent, then the same questions apply. Well, we're only talking about public records, your honor, but I do want to answer your question. Your honor, I think your honor's, and this may not be satisfying to the court, but your honor's absolutely correct. Today in 2021, you're absolutely correct. Someone dealing in that, but you have to remember that when the Crane family first acquired this document, it was back in the 1940s, 1945. It's a little difficult to apprehend an argument that people did not, in the 1940s, understand the value of antiquarian documents. This one on its face is to a Massachusetts military authority. This one, with the least bit of research, would have told someone that it was held in the archives. Your honor, it actually wasn't addressed to a Massachusetts military authority. It was a letter addressed to the Marquis de Lafayette from Alexander Hamilton. Copies of this letter were sent to many military authorities. It ended up in the hands of- But the original letter was sent to a- Judge Lynch is right in the sense that the original letter was in a package of correspondence sent to a general of the Massachusetts military colony. Yes. Counsel, in fact, you agreed to that fact when Judge Selya asked you his initial three questions. You cannot go back on your agreement. I wasn't, your honor. Your question was slightly different. I wasn't going back on what I said to Judge Selya. It was just slightly different, and I just wanted to amplify, your honor, what had been said already. As you know, Judge Selya referred me that I could only answer yes or no. The most part of his question was- Okay, can we establish it was to a Massachusetts military authority, and that under the Massachusetts statute, this, therefore, was a Massachusetts historic public record? It was a Massachusetts historic public record, yes, your honor. It was a public record at one time, and we've acknowledged that, your honor, but what we are saying is, in this particular thing, is that it left the possession of the Commonwealth for whatever reason, and that hasn't been established. It appears if it was, in fact, destroyed or alienated in some way, that information hasn't said anything. The government, in its forfeiture complaint, specifically said that it was stolen. There's no evidence it was stolen. Pardon me. Let's go back to what I understood to be a waiver argument on your part. That unless an argument is made specifically in the forfeiture document, the government is thereafter precluded from relying on such an argument to support its forfeiture? Is that what you are saying? Your honor, what I am actually saying is slightly different. Yes or no, please. No, your honor, that's not what I'm saying, your honor. What I'm saying is slightly different. What I am saying is, the government's ever-changing theory, once it discovered it wasn't stolen, therefore, it wasn't illegal to possess, raised this public record argument, and your honor, I want to say why it's our argument, why this was alienated and no longer... Excuse me, counsel. When the government raised the public record argument in the district court, did you ask the district court to preclude them from arguing that ground? No your honor. Then how can you ask us to invoke waiver? I'm actually not asking the court to invoke waiver. That's not my point. Then what difference does it make whether it's specified in the complaint? Well it shows... If you didn't object to the government arguing it in the district court, you can't object to them arguing it on appeal. Your honors, we did not object in the district court to the theory that they were presenting. I'm sorry, excuse me. We objected to the theory that they were presenting. We didn't... I wasn't suggesting waiver, and I apologize to the court. What I am suggesting is it demonstrates that there is a lack of evidence, and it undercuts what the government and the commonwealth are trying to argue. It is quite plausible that this document was alienated from the commonwealth for a legitimate reason. How? How can it be alienated? Point me to a statute that gives anyone the authority to alienate it. Your honor, the statute says, shall. It doesn't say they must keep it. It says they shall keep it. The supreme court... And both of those words are words of mandatory expression. Your honor, there is no difference between shall and must in terms of the legal effect. Actually, your honor, according to the United States Supreme Court, there is. In Gutierrez de Martinez v. Lamando, the supreme court actually said just that. Shall means may. It doesn't have to mean must. In a particular context, but not in this context. Well, but your honor, Justice Ginsburg, in that opinion, didn't say that it was only for that particular context or for that particular case. And I think it's important, your honor, to note that the commonwealth and the government present a plausible theory of alienation. Over a hundred years ago, the last time that the archives has any record of this letter in its possession, they made a photostatic copy. It is quite plausible at that time that they made the photostatic copy because it was easier to keep the copy than the original letter and discarded it. Well, counsel, we can disagree about whether that's plausible or not. But if the logic of Judge Selye's position holds, why do you have standing to object to forfeiture? It would seem to me you have no claim to be a legitimate owner. Well, I would, with all due respect to Judge Selye, disagree with the logic. I believe that in this particular case, my client certainly has standing to make the claim because of the reasons that we've stated, including the fact that the person... No, no. The standing is statutory standing. There are particular showings you have to make. And it's not enough for you simply to assert that you have an ownership interest. Well, it is. It actually is enough to assert that there's an ownership interest. And what the government and the Commonwealth have argued in response is that you cannot have an ownership interest. They claim that we can't have an ownership interest because under their interpretation of the public records laws in Massachusetts, this document cannot be alienated. That's the argument. Excuse me. I thought I understood if as a matter of law, and here we do seem to have a series of legal interpretive issues, if as a matter of law, you cannot have a plausible claim of ownership, then as a matter of law, you have no standing to object to the forfeiture. So let's take it one step at a time. Do you agree with the proposition that if it is a matter of law that you have no plausible claim of ownership, as opposed to a fact question, that then you lack standing? This is a fact question. Yes or no? Well, Your Honor, I'm not sure which one. As a matter of law, if the law establishes you have no ownership interest, you lack standing. Correct? Yes or no? I'm not sure which law the court is referring to. Counsel, we have been talking about the Massachusetts statute, which is the basis for your ownership claim. The federal forfeiture statute refers to that Massachusetts statute or whatever the basis is for the ownership claim. The ownership claim is a common law claim of purchase that then was devised to the estate beneficiaries. That's the ownership claim. The Massachusetts law doesn't establish an ownership claim. What the government and the commonwealth are arguing is that the Massachusetts law establishes their ownership claim. That's what they are saying. So to answer your question, Your Honor, no. This is a mixed question of fact and law and you cannot determine it based upon this interpretation of the Massachusetts law. Chief Judge Howard, I hope I didn't go over my time, but there's not a clock here. We took you over your time, but I think what we'll do is leave it there and we may pick up on this again during rebuttal. We'll see. But if you would mute your audio and video at this time, we'll hear from Ms. Head for the United States. Good morning, Your Honor. Your Honors, may it please the Court, Carol Head for the United States of America. I want to address one point, well, a couple of points, but one of them is we agree with Judge Salia's analysis of the facts that are undisputed necessary to decide this issue as a matter of law. And so I think that is all you need to decide the issue before the Court. Ms. Head, does it matter in the government's view whether we call this standing or a decision on the merits? It seems to me we've come out to the same place. Well, we have to be moved to strike the claim for lack of standing. That's the argument we've made. However, the appeal is of a final judgment of the District Court awarding, recognizing the Commonwealth's claim and awarding ownership to the Commonwealth. So I suppose in that sense, perhaps it's also an appeal of the merits of that decision. But Mr. Badway made some arguments concerning what was alleged in the verified complaint below, in that the United States hadn't alleged that, had only argued that the document was stolen. I don't think that precludes any argument here, and it was probably waived below, but I did want to point out to your honors that in the complaint filed in this case, which is at the Joint Appendix, page 9, paragraph 13, states since at least 1920, and I did additional statutory research, so it's actually since 1897, before the time of the theft, Massachusetts law has provided that the Commonwealth is charged with preserving and safely keeping all original documents dated before 1870 in its possession. The Massachusetts law regarding public records prohibits the removal and alienation of such documents from the Commonwealth's custody, and as a result, only the Commonwealth can lawfully own original documents from its collection dated before 1870, or the earlier version with 1800, including but not limited to the defendant in Rome, the Hamilton letter. So the contention that we didn't raise this issue in the verified complaint is just flatly belied by the record. And so, your honor, I don't know if you have any specific questions. I'm not sure, I don't want to repeat things. The court, you obviously are very well versed in the arguments that the government is making here about standing, and so I'm happy to answer any questions you have, otherwise I would probably just rest on my brief. I think what we'll do then is we'll hear from Mr. Hornstein, Ms. Head, and if we need to call you back up, you're here, so. Great, thank you, your honor. Proceed, please. Thank you, your honor. Good morning, my name is Adam Hornstein, I'm an assistant attorney general, my pronouns are he, him, his, and I'm here today on behalf of the Commonwealth. The Commonwealth's position is that in light of the concessions the estate has made in response to the questions by Judge Selya, that the Hamilton letter is a Massachusetts historical public record, that it was sent to the nascent Massachusetts government in 1780, and that where it's the estate's burden to prove its standing, that those concessions are fatal to any colorable claim of ownership that the estate might or could plausibly ever have. Under Chapter 66, Section 8, this document only ever and could only ever have belonged to the Commonwealth and its citizens, and as a result the estate, no matter how it came into possession of this document, could not ever have a legally cognizable ownership stake in that letter. Mr. Hornstein, can I back you up and for my own edification ask you a broader question or perhaps a precursor question? In the instance where we're not talking about a historical public document, but rather a public record, or for that matter, any other property of the Commonwealth, I know Massachusetts, like every other state, has alienation provisions. Whose burden would it be to establish that it was appropriately alienated for purposes of standing in a case like this where the claim is that there's a bona fide purchaser? Right. For purposes of standing under federal forfeiture law, and perhaps if the court decides to call Ms. Head back up, she would have more expertise in this area, but as a matter of federal forfeiture law, it is the estate's burden to prove its standing here, Your Honor. It is not the Commonwealth's burden nor the United States' burden to disprove standing, and I'd cite the court to the one-sixth share case or the $8,440,190 in U.S. currency case for support for that proposition, Your Honor. And does that then lead to the conclusion that as part of showing establishing standard that the claimant would also have to show that there was a proper alienation in the ordinary case? I think that would be the case, Your Honor, that the estate would need to, in order to show standing, would need to prove or come forward with some evidence that the document was properly or could properly have been alienated by the Commonwealth. Does that then mean that the claim here, that the factual question about whether it was The Commonwealth's position is that whether or not the document was stolen is immaterial to the question of standing here, Your Honor. Yes. Okay. Thank you. That helps. Counsel, I have one question that goes to Judge Selye's point about this being an issue of law before us that partakes both of the merits and of standing. And it would seem to me that the Commonwealth would be interested in having a full-blown merits analysis that established its ownership and that these documents could not have been alienated for future purposes going well beyond this case. Do you agree with me? I agree with the Court, though the Court can certainly resolve it as I agree with Ms. Head that the Court can resolve it either as a matter of narrow standing as the parties have briefed it, or on the merits. Though I will note, Your Honor, to the extent the Court is addressing the merits, I know Ms. Head cited the portion of her complaint that talks about the theft. The Commonwealth, in response to that complaint, has admitted in its answer, and this is paragraph 5 of the Commonwealth's answer appearing at page 66 in the record, that the document was stolen. So I will just add that for whatever value it is worth, Your Honor. Okay, but as I understood it, you consider that whole issue to be irrelevant to the legal analysis. Correct, as a matter of law this can be determined under Chapter 66 and under its antecedent statutes. That is correct, Your Honor. Okay, thank you. No further questions on my part. Judge Selye, anything else from you? I'm content, Judge Holland. So if you'd like a minute to wrap up, Mr. Hornstein, that's fine otherwise we will rest here. I will rest here, Your Honor. Thank you very much for your time. Okay, if you would go ahead and mute Mr. Badway, you have a couple of minutes. Your Honors, I will be very brief. Your Honors, I think the questions that were asked by the panel of both the Government and the Commonwealth make it quite clear that this is not a simple legal question, but a factual matter. If, in fact, for the first time, we have to have the State has to have the obligation of demonstrating that it was a proper alienation, we've done that based upon the language of the statute and also the facts that were presented. Your Honors, unless there's any further questions, I will rest here. No, thank you very much. Thanks. Alright, that concludes that case.